

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-115-CV

AZLE MANOR, INC. AND                                    APPELLANTS
AZLE MANOR I, L.L.C.

V.

HAROLD R. VADEN, INDIVIDUALLY                            APPELLEE
AND ON BEHALF OF THE ESTATE OF
JOYCE VADEN, DECEASED

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In this interlocutory appeal, Appellants Azle Manor and Azle Manor I,

L.L.C. challenge the trial court's order denying their motion to dismiss Appellee

Harold Vaden's medical malpractice claim for failure to file an adequate expert

---

[1] *See* Tex. R. App. P. 47.4.

report under civil practice and remedies code section 74.351. We affirm in part and reverse and render in part.

## Background

Appellants operate the Azle Manor nursing home. Vaden's wife, Joyce, was an Azle Manor resident. Vaden sued Appellants, alleging that they had negligently allowed Joyce to slip from a shower chair and fall to the floor, breaking some of her bones. According to Vaden, nursing home personnel did not discover her fractures until several days after the accident, and Joyce ultimately died from her injuries.

Vaden served Appellants with two expert reports, one from Carol Massey, R.N. and the other from James Laughlin, D.O. Massey's report addresses standards of care and the breach of those standards as they concern the nurses at Azle Manor, but it does not mention Appellants. Dr. Laughlin's report addresses only causation and does not mention Appellants. Appellants moved to dismiss Vaden's claims, arguing that his expert reports did not satisfy the requirements of section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008). The trial court denied Appellants' motion, and they filed this interlocutory appeal.

2

**Discussion**

In a health care liability claim, a claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed. *Id.* § 74.351(a). If the claimant does not serve an expert report on a defendant physician or health care provider within the 120-day period, then on the motion of the affected physician or health care provider, the trial court must dismiss the claim with prejudice. *Id.* § 74.351(b). The words "has not been served" include cases in which a report has been served but found deficient by the trial court. *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008).

A defendant may challenge the adequacy of a report by filing a motion to dismiss. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). The trial court must grant the motion to dismiss if it finds, after a hearing, that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id.* While the expert report "need not marshal all the plaintiff's proof," *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (construing former art. 4590i, § 13.01), it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal

3

relationship between that failure and the injury, harm, or damages claimed."

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

To constitute a good-faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* at 879. But the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* The claimant's expert must incorporate enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude the claims are meritorious. *Id.*

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Id.* at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See id*. However, section 74.351 does not prohibit *experts*, as

4

opposed to courts, from making inferences based on medical history. *Marvin v. Fithian*, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] Jul. 1, 2008, no pet. h.); *see also* Tex. R. Evid. 703 (providing that expert may draw inferences from the facts or data in a particular case), 705 (providing that expert may testify in terms of opinions and inferences).

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."

5

*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

**1.    Nurse Massey's Report**

Massey's report begins by stating that she reviewed medical records from Azle Manor and Harris Methodist Northwest Hospital, where Joyce was treated for her injuries.  According to Massey's report, Joyce was admitted to the Harris Northwest emergency room on September 22, 2005, as a result of "unresolved pain" from a fall at Azle Manor on September 12.  Azle Manor's records indicate that Joyce fell from a shower chair.  A radiology report states that Joyce had sustained fractures to her pelvis and sacrum and possibly to the neck of her femur.  Massey states that Harris Northwest discharged Joyce the same day and that she returned to Azle Manor.  Joyce was readmitted to the emergency room on November 6, 2005, due to gastrointestinal tract bleeding.

In a section labeled "Applicable Standard of Care," Massey's report quotes excerpts from the Nursing Practice Act.  *See* 22 Tex. Admin. Code Ann. §§ 217.11–.12 (Vernon 2008).  In the next section of the report—"Applicable Standard of Care as Applied to the Case"—Massey sets out how, in her opinion, the Azle Manor nursing staff violated the relevant provisions of the administrative code:

6

The initial information documented in the Harris Northwest Emergency Room Report, indicates that Ms. Vaden fell from a "bedside commode," whereas the Azle Manor Transfer Record indicates that she fell from a shower chair. In either case, based on these two sources, it appears that Ms. Vaden fell and was injured. Unless the injury was literally allowed to happen it seems reasonable to believe that the appropriate safety precautions were not implemented as the standard requires. No report to the contrary has been provided to me that would explain this situation in a more positive light.

. . . .

In this case implementation of a safety belt while showering would have constituted the appropriate measure [to promote Joyce's safety].

. . . .

An assessment of the facts under this standard seems to suggest that the standard was breached when Ms. Vaden fell from the shower chair because it seems reasonable to infer that she would not have fallen in either of the two scenarios presented had she been restrained or other safety precautions had been instituted.

. . . .

Appropriate restraints would certainly have greatly reduced the chances of Ms. Vaden falling whether on the commode or in the shower chair. As noted above, there are no records indicating that such restraints were implemented.

. . . .

[I]f Ms. Vaden's care was assigned to someone else who was incapable of adequately caring for her or even someone who was but failed to do so and the RN or RNs in charge failed to supervise those assigned then the RN or RNs not only acted unprofessionally

7

but also failed to meet the applicable standard of care and, given Ms. Vaden's injuries as a result of a fall, it seems entirely reasonable to believe that she suffered as a result of these actions.

Massey's report includes a section on causation and ends with a summary of her qualifications, in which she states that she is a registered nurse, is licensed to practice in Texas and several other states, and has twenty years of professional nursing experience.

### a. Failure to identify Appellants

Appellants point to several alleged deficiencies in Massey's report. First, they contend that her report is deficient because it does not identify the standard of care and breach applicable to each Appellant. Appellants rely on *Bogar v. Esparza*, in which the Austin court of appeals recently held that a report that does not identify a defendant at least in some manner within its four corners is, for that reason alone, deficient as to that defendant because it would require the reader to infer or make an educated guess as to whose actions the expert is complaining. 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.). In *Bogar*, the Austin court held that the plaintiff's expert report was deficient because "it does not identify in any way the person or persons whose conduct is the subject of any of his opinions regarding standard of care, causation, and death." *Id.* But the court also noted that

8

> this is not a "magic words" test. There may be a number of ways that a defendant may be referenced within the four corners [of] a report so as to comply with the legislature's mandate that the report "provide[ ] a fair summary as of the date of the report regarding applicable standards of care, the manner in which the care *rendered by the physician or health care provider* failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."

*Id.* at n.1 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6)); *see also Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 282 (Tex. App.—Austin 2007, no pet.) ("We are mindful that a report's adequacy under section 74.351 does not depend on whether the expert uses any particular magic words such as 'the standard of care was breached *by Dr. Kessler*.'").

Moreover, when a plaintiff asserts a claim for vicarious liability against a corporate healthcare defendant, the plaintiff's expert report need not mention the corporate defendant by name. *Univ. of Tex. Sw. Med. Ctr. v. Dale,* 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.). In *Dale*, the plaintiff based his claims against the defendant hospital entirely upon the actions of its resident physicians and did not assert a claim for direct negligence against the hospital. *Id.* Noting that "what is relevant for purposes of the expert report is that the report specifically identify the person whose conduct the plaintiff is calling into question and show how that person's conduct constituted negligence," the court held that the plaintiff's expert report—which did not

9

mention the corporate defendant by name and focused on the alleged negligence of the resident physicians—complied with the requirements of section 74.351. *Id.* If the report identifies conduct by the hospital's employee, the hospital is implicated, and as long as the report adequately addresses the standard of care applicable to the employee, how the employee breached the standard of care, and that the breach caused the plaintiff's injury, it is sufficient to satisfy the expert report requirement for the vicarious liability claims against the hospital. *Id.*; *see also Casados v. Harris Methodist H-E-B*, No. 02-05-00080-CV, 2006 WL 2034230, at *4 (Tex. App.—Fort Worth July 20, 2006, no pet.) (mem. op.) (holding plaintiff satisfied expert report requirements with respect to vicarious liability claims by filing expert report detailing negligence of doctors, for whose actions hospital was liable).

In this case, Vaden asserts claims for both direct negligence and vicarious liability against Appellants: "Plaintiff would show that the damages that he and Mrs. Vaden sustained were a direct and proximate consequence of the negligence of Defendants and Defendants' agents, servants, and employees. . . . According to the doctrine of respondeat superior, Azle Manor are [sic] responsible for the negligent act of its agents and employees." Plaintiff's amended petition enumerates two specific acts of negligence—failing

to strap Joyce into the chair and failing to monitor Joyce while she was in the chair—that appear to be directed at Appellants' employees, but a third enumerated instance of negligence—"failing to act as an ordinary prudent person would have under the same or similar circumstances"—is broad enough to encompass a claim for direct liability against Appellants, and the words "among other things" preceding the enumerated list leave the door open for further allegations of direct liability against Appellants.

Massey's report does not mention Appellants by name. Instead, like the report in *Dale*, her report focuses on the alleged negligence of Appellants' employees. Assuming for the moment that Massey's report adequately addresses the standard of care applicable to Appellants' employees, how the employees breached the standard of care, and how the breach caused the plaintiff's injury, we hold that the report is sufficient to satisfy the expert report requirement for the vicarious liability claims against Appellants. *See Dale*, 188 S.W.3d at 879. But her report is inadequate with regard to Vaden's direct liability claims because it does not mention Appellants, let alone describe the standards of care applicable to them directly or how Appellants breached those standards, and as we have already noted, Dr. Laughlin's report does not discuss standards of care or breach of those standards at all. *See Bogar*, 257 S.W.3d

11

at 364. We therefore hold that the trial court erred by denying Appellants' motion to dismiss with regard to Vaden's direct liability claims.[2] *See Methodist Charlton Med. Ctr. v. Steele*, No. 05-07-01762-CV, 2008 WL 3844557, at *4 (Tex. App.—Dallas Aug. 19, 2008, no pet.) (reversing trial court's denial of hospital's motion to dismiss with regard to plaintiff's direct-negligence claims but affirming denial with regard to vicarious liability claims when plaintiff's expert report addressed only vicarious liability claims).

### b.    Standard of care

Next, Appellants argue that Massey's report does not adequately identify the standards of care regarding Appellants' nursing staff. Appellants contend that the Nursing Practice Act, which Massey's report quotes, is too general to establish a standard of care in an expert report, citing *Singleton v. Northwest Texas Healthcare System*, No. 07-03-00552-CV, 2006 WL 468747, at *3 (Tex. App.—Amarillo Feb. 28, 2006, no pet.) (mem. op.). In *Singleton*, the Amarillo court held that recitations from the Nursing Practice Act similar to the recitations in Massey's report "are too general to identify a standard of care applicable to [the defendant hospital] or how [the hospital] breached that

---

[2] Because of this disposition, we need not consider Appellants' complaint that Massey's report does not establish her qualifications to offer an opinion regarding Vaden's direct negligence claims. *See* Tex. R. App. P. 47.1.

12

standard of care." *Id.* However, the court noted that "[t]he report comes closer to stating a standard of care with its statement that [the patient's] score on the fall risk assessment required [the hospital] to implement 'fall precautions' . . . [b]ut the report does not tell the defendant and court what 'fall precautions' are." *Id*. The court held that the report was inadequate because it "fails to inform [the hospital] of the specific conduct [the patient] has called into question." *Id.* (citing *Palacios*, 46 S.W.3d at 879). Significantly, *Singleton* does not hold that the Nursing Practice Act can never be used to establish a standard of care; it simply held that the report in that case, which relied in part on excerpts from the Act, did not set out the standard of care with sufficient specificity.

Although Massey's report quotes some of the same sections of the Nursing Practice Act as the report in *Singleton*, the cases are distinguishable. Unlike the vague report in *Singleton*, Massey's report points out the specific conduct Vaden has called into question, namely, Appellants' nurses' failure to secure Joyce in the shower chair: "In this case implementation of a safety belt while showering would have constituted an appropriate measure. . . . [S]he would not have fallen . . . had she been restrained . . . . Appropriate restraint would certainly have reduced the chances of [Joyce] falling . . . ." These

13

statements are sufficient to inform Appellants of the specific conduct Vaden has called into question. *See Palacios*, 46 S.W.3d at 879. We therefore hold that Massey's report set out the applicable standard of care with sufficient specificity to pass section 74.351 muster.

### c. Conclusory and speculative

Appellants argue that Massey's report is conclusory and speculative, pointing to statements in her report such as "it appears that [Joyce] fell and was injured," "it seems reasonable to believe that appropriate safety precautions were not implemented," "it seems reasonable to infer that she would not have fallen . . . had she been restrained," and "no records to the contrary have been provided to me." Appellants contend that Massey piles inference upon inference to create a mere possibility that Appellants' nurses breached a standard of care and that the absence of records of an activity—in this case, restraining Joyce in the shower chair—will not support an inference that she was not, in fact, restrained.

The rules of evidence allow an expert to draw inferences from the underlying facts or data. *See* Tex. R. Evid. 703, 705. Section 74.351 does not prohibit experts from making inferences based on medical history. *Marvin*, 2008 WL 2579824, at *4. Moreover, the absence of an entry in the records

14

of a regularly conducted activity is admissible to show the nonoccurrence of the matter.  Tex. R. Evid. 803(7).  Thus, Massey's inferences, and the fact that she draws some of them from what is *not* in Joyce's medical records, do not render her report defective.

The cases Appellants rely on for the opposite conclusion are distinguishable.  In *Strom v. Memorial Hermann Hospital System*, the First Court of Appeals held that two expert reports failed to meet section 74.351's requirements because they completely failed to set out a standard of care.  110 S.W.3d 216, 223 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  By contrast, much of Massey's report is devoted to setting out the standards of care, and we have already held that her report set out the standards of care with sufficient specificity.  In *Lopez v. Sinha*, the Fourteenth Court of Appeals held that a report was deficient because it recited a result—"complete evacuation of bile"—but did not include specific information about what the defendant should have done differently to achieve that result.  No. 14-05-00606-CV, 2006 WL 2669355, at *4 (Tex. App.—Houston [14th Dist.] Sept. 19, 2006, no pet.). Massey's report includes specific information about what Appellants' staff should have done to prevent the fall, namely, restrain Joyce in the shower chair.  In the third case cited by Appellants, *Gray v. CHCA Bayshore, L.P.*, the

15

first court deemed a report deficient because it did "not state with any specificity how [the defendant's] departure from the standard of care *caused* [the patient's] knee injury." 189 S.W.3d 855, 860 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (emphasis added). *Gray* is inapposite because, as we discuss below, Vaden does not rely on Massey's report to establish causation.

Further, even though Massey's report draws inferences from the medical records, it satisfies the two key requirements of an expert report identified by the supreme court in *Palacios* by (1) informing the Appellants of the specific conduct Vaden has called into question—namely, the failure of Appellants' staff to prevent Joyce's fall from the shower chair—and (2) providing a basis for the trial court to conclude the claims are meritorious. *See Palacios*, 86 S.W.3d at 475. We therefore hold that her report is not conclusory and speculative.

### d. Causation

Finally, Appellants argue that Massey is not qualified to render an opinion regarding causation because under section 74.351(r)(5)(C), only a physician may render an opinion regarding causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C); *Kelly v. Rendon*, 255 S.W.3d 665, 675 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Vaden concedes this point and relies on Dr. Laughlin's report to address causation. Therefore, we turn now

to Dr. Laughlin's report to determine whether it supplies the opinion on causation that Massey's report cannot.

## 2. Dr. Laughlin's report

Dr. Laughlin's report states, in its entirety,

> After reviewing the records extensively, I believe in all reasonable and medical probability that the accident of September 12, 2005 caused the fracture of this patient's right non-displaced acetabular and findings suspicious for a nondisplaced and nonimpacted femoral neck fracture.
>
> Some disagreement in chart about orthopedic diagnosis and CT report used as defin[i]tive.

Dr. Laughlin's curriculum vitae is attached to his report.

Appellants contend that Dr. Laughlin's report is defective for several reasons. First, as they did with regard to Massey's report, Appellants argue that Dr. Laughlin's report is deficient because it does not identify either Appellant by name. But as we noted in connection with Massey's report, an expert report need not mention a defendant by name when the plaintiff asserts only vicarious liability claims against the defendant. *See Dale,* 188 S.W.3d at 879.

Second, Appellants fault Dr. Laughlin's report for failing to "identify any alleged negligence of either Appellant." But section 74.351(i) specifically provides that a plaintiff need not support both liability and causation in a single

17

expert report: "Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers *or with respect to both liability and causation issues* for a physician or health care provider."  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (emphasis added).  Because section 74.351(i) allows a plaintiff to address the required elements with more than one report, a plaintiff's case will not be dismissed simply because each individual report, viewed on its own, does not fully address each statutory element. *Heart Hosp. of Austin v. Matthews*, 212 S.W.3d 331, 335–36 (Tex. App.—Austin 2006), *aff'd*, 262 S.W.3d 316  (Tex. 2007).  Instead, the trial court must look at all of the reports served by the plaintiff and determine if, viewed as a whole, the reports together address each of the required elements. *Id.*

Vaden relies on Dr. Laughlin's report only for causation; therefore, Dr. Laughlin need not address Appellants' vicarious liability by discussing the applicable standards of care or breach of those standards. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i).  Likewise, Appellant's third argument, that Dr. Laughlin "does not explain the basis of his statement by linking his conclusions to the facts of the case," does not take into account Massey's report.  Dr. Laughlin's report says that in reasonable medical probability and based on the

18

medical records, Joyce's "accident" on September 12 caused her hip fracture. We know from Massey's report that the "accident" on September 12 was Joyce's fall from the shower chair. The two reports, when read together, adequately link Dr. Laughlin's conclusion that the "accident" caused Joyce's injury to the fall from the shower chair identified in Massey's report.

Appellants next fault Dr. Laughlin's report for being conjectural because it states that the accident caused "findings suspicious for a nondisplaced and nonimpacted femoral neck fracture." But in making this argument, Appellants ignore the middle part of the sentence in question, in which Dr. Laughlin states that the accident "caused the fracture of this patient's right non-displaced acetabular." Even if the words "findings suspicious for a . . . fracture" suggest only a conjectural or possible injury, the words "caused the fracture" link Dr. Laughlin's opinion on causation to a real injury.

Appellants further contend that Dr. Laughlin's report is deficient because Vaden alleged that Joyce suffered a "serious and disabling injury," but the report does not state that an acetabular fracture is serious or disabling. Vaden alleged, "As a result [of Appellants' staff's failure to strap Joyce into the chair, she] slipped out of the chair and onto the hard floor, sustaining serious and disabling injuries. . . . Azle Manor failed to discover [her] *fractured bones* from

19

the fall until more than seven [7] days later." [Emphasis added.] It is apparent that the fracture referenced in Dr. Laughlin's report is the "serious and disabling injury" alleged in Vaden's petition. Appellants cite our opinion in *Windsor v. Maxwell* for the statement that "the report must support the cause of action alleged by the plaintiff in its pleadings." 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied) (holding report deficient when plaintiff alleged that surgeon pierced cerebral artery with catheter but expert reported only that surgeon caused reduced blood flow through the artery being catheterized). In this case, Vaden alleged that a fall caused a fracture, and Dr. Laughlin opined that a fall caused a fracture. Thus, his report supports the cause of action Vaden alleged in his pleadings.

Finally, Appellants argue that Vaden did not establish Dr. Laughlin's qualifications to render an opinion about proximate cause. Section 74.351 provides that a "physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence" may render an expert report on causation. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). Section 74.001 defines "physician" as "an individual licensed to practice medicine in this state." *Id.* § 74.001(23)(A) (Vernon 2005). To be so qualified under the Texas Rules of Evidence, an expert must have knowledge, skill,

experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996) (citing Tex. R. Evid. 702). A trial court has broad discretion in determining whether expert testimony is admissible. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006).

Dr. Laughlin's curriculum vitae recites that he is an osteopathic surgeon certified by the American College of Osteopathic Surgeons and the American Osteopathic Academy of Orthopedic Surgeons. He graduated from the College of Osteopathic Medicine in Kansas City, Missouri, in 1965 and completed an internship and several residencies at osteopathic hospitals. Dr. Laughlin has current privileges at Renaissance General Hospital and John Peter Smith Network Hospital, is the assistant supervisor of the orthopedic resident program at John Peter Smith Hospital, and is a senior member of the team that evaluates orthopedic surgeons to determine if they are qualified for certification by the American College of Osteopathic Surgeons. He is the medical director of Q-Plus Outpatient Surgery Center of Grand Prairie. He also served as a surgeon for various branches of the military from 1969 through 2001. Dr. Laughlin's scholarly publications, including works titled "Commonly Misdiagnosed

21

Fractures," "Fractures in Children," "Fractures of the Elbow," and "Fractures of the Talus," show an interest in and experience with bone fractures.

Appellants argue that Dr. Laughlin is not a "physician" because his curriculum vitae does not state that he is licensed to practice medicine in Texas. The facts that he holds staff privileges at two area hospitals and serves as the medical director of a surgery center indicate that he is licensed to practice medicine in Texas.

Appellants next argue that Dr. Laughlin is not qualified to render expert testimony under rule of evidence 702 because his curriculum vitae "does not state that he specializes in fractures in geriatric patients or that he specializes in fractures of the hip." Nothing in rule 702 requires such particularized specialization to qualify as an expert. The trial court could have reasonably concluded from Dr. Laughlin's curriculum vitae that he had the knowledge, skill, experience, education, or training to render a causation opinion as simple and straightforward as the one in this case, namely, that Joyce's fall from the shower chair fractured her acetabulum. *See Mosely v. Mundine*, 249 S.W.3d 775, 779–80 (Tex. App.—Dallas 2008, no pet.) (holding record sufficient to support trial court's conclusion that emergency room internist was qualified to furnish report under rule 702 and section 74.351 concerning treatment and prognosis for cancer based on expert's education, experience, and training).

22

Appellants further challenge Dr. Laughlin's qualifications as an expert because his report "does not identify the methodology used to reach his conclusion" and is therefore unreliable. *See Mack Trucks*, 206 S.W.3d at 578 ("An expert witness may testify regarding 'scientific, technical, or other specialized' matters if . . . the expert's opinion is . . . based on a reliable foundation."). Dr. Laughlin's report *does* identify his methodology: he reviewed the medical records and concluded that the fall caused the fracture. It is difficult to imagine what other methodology a physician would employ to determine the cause of broken bone.

## Conclusion

Read together, Massey's and Dr. Laughlin's reports (1) inform the defendants of the specific conduct Vaden has called into question and (2) provide a basis for the trial court to conclude his vicarious liability claims are meritorious. *See Palacios*, 46 S.W.3d at 875. Both Massey and Dr. Laughlin appear to be qualified to render the opinions set out in their reports. We therefore hold that the trial court did not abuse its discretion by determining that the reports represent an objective good faith effort to comply with the definition of an expert report in the statute with regard to Vaden's vicarious liability claims against Appellants. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). But we hold that the trial court did abuse its discretion by denying

23

Appellants' motion to dismiss with regard to Vaden's direct liability claims, which both reports wholly failed to address. We therefore overrule Appellants' sole issue in part and sustain it in part. We affirm that portion of the trial court's order denying Appellants' motion to dismiss with regard to Vaden's vicarious liability claims. We reverse the portion of the trial court's order denying Appellants' motion to dismiss Vaden's claims based on Appellants' direct liability, and we render judgment dismissing those claims with prejudice.[3]

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: November 6, 2008

---

[3] Because Vaden did timely serve an expert report in regard to a portion of his claims, we need not address Appellants' request for attorney's fees. *See Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 870 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (declining to address appellant hospital's request for attorney's fees in appeal from denial of section 74.351 motion to dismiss when expert report addressed vicarious liability claims but not direct liability claims); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (stating that, if "expert report has not been served within the period specified by [s]ubsection (a), the court, on the motion of . . . health care provider, shall . . . award[ ] . . . reasonable attorney's fees").

24